CHARLES P. STONE, DEFENDANT IN ERROR. v. WEST JERSEY ICE MANUFACTURING COMPANY, PLAINTIFF IN ERROR.

Submitted March 26, 1900—Decided June 11, 1900.

1. Plaintiff, a dealer in ice, ran two wagons for the delivery of ice to his customers. One Bagley was the driver of one of these wagons; he had a share in the profits for his services. His weekly wages were half of whatever was made after the ice was paid for, but he had no control over the business, did not own the team, and his contract with the plaintiff related to the one wagon that he drove; he had nothing to do with the other wagons or the profits realized from them. *Held*, that Bagley was not a partner of the plaintiff in the business, and need not be joined with him in the prosecution of a suit for the failure of the defendant to deliver ice to the plaintiff.

2. Upon objection being made to the non-joinder of Bagley, plaintiff's counsel applied to the court for leave to amend the declaration by making Bagley a co-plaintiff. This application was granted,

whereupon defendant's counsel excepted, and an exception was allowed and sealed accordingly. No amendment in fact was made. The record from the declaration to the judgment shows a cause of action wherein Stone was the sole plaintiff. The case was tried, and properly tried, without making Bagley a co-plaintiff.

3. When an action is brought in the name of one of several joint contractors, and no notice is given of the non-joinder, the defendant cannot at the trial question the right of the plaintiff to sue alone, but he may insist that the contract was joint, and make any defence under it that could be made if all the contractors had been joint plaintiffs.

4. The order of the judge to amend was irregular, but immaterial. The contract was in writing, made with Stone individually. Bagley was not a partner, and the suit very properly proceeded in Stone's name alone. Leave to amend not having been followed up, and the case tried throughout with Stone the only plaintiff, the exception taken is of no avail.

On writ of error to the Camden Circuit.

Before Depue, Chief Justice, and Justices Van Syckel and Gummere.

For the plaintiff in error, *Thomas E. French.*

For the defendant in error, *Frederick A. Rex.*

The opinion of the court was delivered by

Depue, Chief Justice. Charles P. Stone, the plaintiff, was engaged in the business of selling and delivering ice to customers in the city of Camden, and in the conduct of his business ran two wagons for the delivery of ice to his customers. The defendant is a company engaged in the manufacture of ice in the city of Camden. This suit is brought to recover damages for the breach of the following contract between the parties:

"May 23, 1898. Sold to C. Stone, Camden, New Jersey, his entire supply and requirements of ice for his business located in Camden, New Jersey, for one year from the date hereof. Price, $2.75 per ton at our platform. Terms, net cash. Signed, West Jersey Ice Manufacturing Company, by

George H. Barrett, Acting Treasurer.  Accepted, Charles P. Stone."

The plaintiff received ice from the defendant under this contract until the latter part of June, when, in consequence of a disagreement between the parties, the plaintiff failed to get ice from the defendant, and purchased it of the Knickerbocker Ice Company, at a price above that named in the contract between the parties, to supply his customers.

The first exception to the rulings of the trial court in this case is on the refusal to nonsuit on the ground that one James Bagley was a proper party; that he was interested in the contract, and might have an independent suit.  Bagley testified that he worked for Stone—ran a wagon for him.  To the question, "What arrangement did you have with Mr. Stone about wages?" he answered, "Well, I was to have halves, what we call halves; all over the ice bill we would divide; my weekly wages were whatever we could make after the ice was paid for."  He also testified that he had no control of the business, did not own the team, and that his contract with Stone related only to the one wagon he drove; that he had nothing to do with the other wagons or the profits realized from them. Bagley was not a partner with Stone in this business.  *McMahon* v. *O'Donnell*, 5 *C. E. Gr.* 306; *Wild* v. *Davenport*, 19 *Vroom* 129.

Upon the above objection being made, the plaintiff's counsel applied to the court for leave to amend the declaration by making Bagley a co-plaintiff.  This application was granted, whereupon the defendant's counsel excepted.  An exception was allowed, and sealed accordingly.  No amendment in fact was made.  The record from the declaration to the judgment shows a cause of action wherein Stone was the sole plaintiff. The case appears to have been tried, and properly tried, without making Bagley co-plaintiff.  Section 37 of the Practice act (*Gen. Stat., p.* 2539) provides, "That the non-joinder or misjoinder of a plaintiff shall not be objected to by the defendant, unless he give written notice of such objection to the plaintiff within five days after filing his plea or demurrer;" and then, "it shall be lawful for the court or a

judge at any time before the trial of the issue to order that any person not joined as plaintiff in such cause shall be so joined," &c. When an action is brought in the name of one of several joint contractors, and no notice is given of the non-joinder, the defendant cannot at the trial question the right of the plaintiff to sue alone, but he may insist that the contract was joint, and make any defence under it that could be made if all the contractors had been joined as plaintiffs. *Brown* v. *Fitch,* 4 *Vroom* 418. Whether the order of the judge to amend was irregular or not is immaterial. The contract was in writing, made with Stone individually; Bagley was not a partner, and the suit very properly proceeded in Stone's name alone. The entire proceedings, from the motion to nonsuit on the ground that Bagley was interested in the contract, the application to amend by adding his name as a party, and the privilege given by the court to amend, and the exception taken thereon, were irregular. Leave to amend not having been followed up, and the case tried throughout with Stone as the only plaintiff, the exception taken is of no avail.

The remaining exceptions are directed to the charge of the court. The written contract in this case having been signed by the West Jersey Ice Manufacturing Company and an acceptance added in writing by the plaintiff, the contract was a mutual contract; the company agreeing to furnish the plaintiff's entire supply and requirements of ice for his business, and the plaintiff agreeing to purchase his entire supply and requirements of ice for his business at the price named in the agreement. The evidence shows that the defendant furnished Stone with ice until the latter part of June, when the company refused to furnish him any ice in the future. The defendant, besides the general issue, pleaded, first, that after the making of the contract and before any breach by the defendant of the terms of the contract, the plaintiff purchased ice necessary in his business of persons other than the defendant, wherefore, &c.; and, second, that on the 27th of June, 1898, the defendant being ready and willing to perform its contract, the plaintiff then and there renounced and

rescinded said contract, and the defendant then and there concurred in and agreed to such renunciation and rescission, wherefore, &c.

There was no evidence that justified the conclusion that there was a renunciation or rescission of the contract by mutual consent. It appears from the evidence on the part of the plaintiff that on one occasion he purchased natural ice of another dealer to supply one customer. The plaintiff testifies that he applied to the manager of the defendant for permission to get a little ice for this customer, and that permission was given. The purchase of ice of another dealer, by consent of the defendant, would, obviously, not amount to a breach of the contract or justify a rescission, nor would one or more acts in default on the part of the plaintiff discharge the defendant from its obligation to continue to perform its contract, unless the conduct of the plaintiff was such as to evince an intention to abandon the contract or a design no longer to be bound by its terms. The refusal of the plaintiff to comply with the terms of the contract may have been such as to warrant the conclusion that he abandoned the contract and was no longer to be bound by it. *Blackburn* v. *Reilly,* 18 *Vroom* 290; *Polls* v. *Point Pleasant Land Co.,* 20 *Id.* 411, 415; *Skillman Hardware Co.* v. *Davis,* 24 *Id.* 144, 149; *Otis* v. *Adams,* 27 *Id.* 38, 39; *Trotter* v. *Heckscher,* 13 *Stew. Eq.* 612, 636. There was evidence, on the part of the defendant, that the manager of the ice company, two or three weeks before the time when ice was refused, complained to the plaintiff about his handling natural ice; that he told the plaintiff, "If you don't quit it, there will be a fuss over it;" that two or three times he told him about handling natural ice gotten from other dealers, telling him that the company objected to it, "that his contract distinctly read that we must give him his entire requirements of ice for his business, which he was not taking from us, and every day he backed up to our platform and would unload his natural ice right on our platform, put his manufactured on and then put his natural on top;" that no permission was given to him to obtain ice from anyone else. The manager testifies that he knew that the plaintiff

was dealing in natural ice; that he had natural ice on his wagon probably a dozen times; that he told the plaintiff "he was breaking his contract by using the natural ice; that we did not allow our men to carry natural ice on the wagon, as his contract distinctly said we were to supply him his entire requirements of ice;" that he told him this ten days or two weeks after the contract was made, and yet he went on just the same.

The evidence, under the cases just cited, was sufficient to present an issue which would justify the defendant in withdrawing from its contract—to be submitted to the jury with proper instructions.

At the close of the summing up, the defendant asked the court to charge that if the jury find the plaintiff purchased ice elsewhere after the contract was entered into, and before any breach by the defendant, the jury must find a verdict for the defendant. That instruction was properly refused, for reasons already given. The judge charged the jury that the defence was that the plaintiff voluntarily abandoned his contract, referring to one occasion when the plaintiff came to the defendant's depot and he was told that he would have to go to another depot to get his ice; that the plaintiff then said he would not do it, and did not go any more; "in other words, that he voluntarily abandoned his contract. If you believe that, the plaintiff would not be entitled to recover." That the jury had that one simple question to determine, whether the plaintiff abandoned his contract, or whether, on the other hand, the defendant refused to comply with its part of it and furnish the ice. So far the instructions are unobjectionable. Then follows the part of the charge excepted to, which is in these words: "The question, as far as this contract goes, as to the sale of natural ice, is not set up here by the defendant as a defence itself, because they say he abandoned his contract, and that they did not refuse to give him ice by reason of his getting natural ice. They do not allege that. They say he abandoned his own contract." The exception which seems to be directed to that part of the charge is in these words: "The defendant excepts to that part of the

charge of the court wherein the court charged that the defendant did not set up as a defence that the plaintiff had violated the contract on his part in the first instance." If, by this exception, it is meant to ask for an instruction that the default of the plaintiff to obtain ice from the defendant in one instance justified a rescission of the contract, the request was properly refused. The trial judge throughout his charge manifestly treated the transaction with respect to the purchase by the plaintiff of ice elsewhere as evidence on the issue whether the plaintiff voluntarily abandoned his contract or justified the defendant in rescinding it.

This exception is not justified by the reference to the charge as delivered.

The other exception relates to the charge with respect to the measure of damages. The proof was that after the defendant's refusal to furnish ice, the plaintiff purchased ice of the Knickerbocker Ice Company. That ice was furnished to the plaintiff after that is undisputed, and the statement from the books of the Knickerbocker Ice Company of purchases on the plaintiff's account, when made and what they amounted to, was admitted without objection. The plaintiff testifies that after the defendant refused to supply him with ice he went back to the Knickerbocker Ice Company for his supply of ice, and he testifies to the price that he was required to pay, the price having gone up. The exception to the charge of the court was that there was no proof that the ice bought from the Knickerbocker Ice Company was used in the plaintiff's business. The proof on that subject is plenary. The exception states a further ground on a denial of a consent that he purchase ice elsewhere. On the issue in this case, that the contract was broken by the defendant by the consent to the plaintiff to obtain a supply of ice elsewhere was irrelevant.

Finding no exception on the record that would justify a reversal, the judgment is affirmed.